UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE PAINTING COMPANY,

          Plaintiff

vs.

WEIS BUILDERS, INC., ET AL.,

          Defendants

Case No. 2:08-CV-473
District Judge Sargus
Magistrate Judge Abel

OPINION AND ORDER

According to the Complaint (Doc. 2) and other documents filed by the parties in connection with submission of the motion to dismiss discussed below, Plaintiff The Painting Company (or TPC), is a painting sub-contractor with its principle place of business in Plain City, Union County, Ohio, which is here suing Defendants Weis Buliders, Inc. (Weis), a general construction contractor with its principal place of business in Minneapolis, Minnesota, and Federal Insurance Company of Warren, New Jersey (Federal), surety of Weis' performance bond on its general contract with First Community Villages for construction of a project known as The Chelsea in Columbus, Ohio. The basic construction contract executed March 30, 2005, between Defendant Weis and First Community Village (Defs' Mot, to Diss., Ex. A, Doc. 6-4 ) includes Defendant Federal's surety bond, (Id., Ex. B, Doc. 6-5). Defendant Weis' subcontract with Plaintiff TPC (in which the latter agrees to provide labor and materials necessary to complete the interior and exterior painting required by the general contract for sum of $503,045.00) was signed by Weis on April

22, 2005. Comp., Ex. B, Doc, 2-3. On May 15, 2008, TPC filed this action for non-payment of moneys allegedly due but not paid for completed painting work done at The Chelsea under its subcontract with Weis. Doc. 2, ¶¶ 29, 33. Plaintiff claims jurisdiction in this court under 28 U,S.C. §1332 based on diversity of citizenship of the parties and an amount in controversy in excess of $75,000.

On July 14, 2008 and before answering, Defendants Weis and Federal moved pursuant to Rule 12(b)(1) and (b)(3), Fed. R. Civ. P., and 28 U.S.C. §1406(a) to dismiss TPC's complaint, based on forum selection clauses in Weis' painting subcontract with TPC and in Weis' general contract for construction of The Chelsea to which the surety bond issued by Federal applies. As pertinent here, the general construction contract between Defendant Weis and the Owner, First Community Village contains the following express provision:

> Any Claim arising out of or pertaining to the Contract shall be decided by litigation. Each of the parties consents to the jurisdiction of the Common Pleas Court of Franklin County, Ohio, and agrees that this Court shall have exclusive jurisdiction over all claims, disputes, and other matters arising out of or related to the Contract, * * *

Defs' Mot, to Diss., Ex. A, Doc. 6-4, p. 32, ¶4.6.1. Defendant Federal's surety bond for Weis' performance of the contract, also dated March 30, 2005, states that the contract "is made a part of this bond the same as though set forth herein." Id., Ex. B, Doc. 6-5, titled "CONTRACT BOND (O.R.C. §153.57)".

The subcontract between Defendant Weis and Plaintiff TPC appears from its structure and the language of its general provisions to have been created by Weis from a standard form it chose to use as a basis for its subcontracts on The Chelsea

2

project and perhaps others in the state of Ohio.[1] In the case of this particular subcontract, there have been several amendments by hand-written strike-through and/or interlineation, initialed by the parties to indicate agreed-upon adjustments to the standard form's provisions. Among many others, the subcontract contains the following express references to Weis' general contract with First Community Village for construction of the Chelsea:

> I. THE SUBCONTRACTOR AGREES AS FOLLOWS:
> \*\*\*          \*\*\*          \*\*\*
>
> L. To be bound to the Contractor by the terms of the General Contract, to conform to and to comply with the provisions of the General Contract, to furnish such shop drawings or samples as may be required, and to assume toward the Contractor all obligations and responsibilities that the contractor assumes in and by the General Contract toward the Owner, insofar as they are applicable to this Subcontract. Where any provision of the General Contract Documents between the Owner and the Contractor is inconsistent with any provision of the Agreement, this Subcontract shall govern.
>
> \*\*\*          \*\*\*          \*\*\*

Comp., Ex. B, Doc. 2-3, p. 2. Respecting disputes, the subcontract further provides:

> II.. THE CONTRACTOR AND THE SUBCONTRACTOR AGREE AS FOLLOWS:
> \*\*\*          \*\*\*          \*\*\*:
>
> F. Any dispute arising out of or related to this Subcontract, including, without limitation, the breach thereof or disputes between the Subcontractor and the Owner, shall at Contractor's sole discretion and

---

1. Except for specific name identification in the initial paragraph, the pre-printed, general provisions of the subcontract use descriptive terms such as "Contractor," "Subcontractor," "Owner" and "Project" that may be used with any number of previous specific identifications. However, the pre-printed provisions here do include references both to Weis' home court jurisdiction of Hennapin County, Minnesota, and to the Ohio Revised Code, which presumably would apply to The Chelsea project in this case located in Columbus, Ohio..

3

selection either (a) be settled by the same procedures and in the same manner as required by General Contract for disputes between Contractor and Owner, including, without limitation, any requirement to arbitrate or mediate disputes; or (b) be settled by litigation in a court of law venued in the appropriate state or federal court in *Franklin County, Ohio,*\* which court the parties agree has jurisdiction over and is the most convenient for the resolution over said dispute; or (c) be settled by arbitration venued in *Franklin County, Ohio*\* in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, and judgment rendered upon the award may be entered in any court having jurisdiction thereof. . . .

Id., p. 3 (In each case above, "\*" indicates hand-written and initialed strike-through of the words "Hennepin County, Minnesota" and substitution by interlineation of the words printed here in italics.)

Defendants' memorandum in support of their motion to dismiss attaches and relies on their counsel's E-mail and regular U.S. Mail letters dated June 2, 2008, directed to Plaintiff's counsel referencing and acknowledging Plaintiff's filing of this law suit. The text quotes and relies on portions of the above contract provisions and states Weis' election "to proceed under clause (a) of the referenced provision of our Subcontract calling for this dispute to be settled by the same procedures and in the same manner as required by the general contract." Defs' Mot, to Diss., Ex. E, Doc. 6-8, p. 2. The letter then continues:

> . . . . The general contract between Weis and First Community Village states in Section 9.1.1 that all claims or disputes shall be resolved by the Court of Common Pleas for Franklin County, Ohio which has exclusive jurisdiction.
>
> In addition, Section 4.6.1 of the General Conditions for the Contract further states that any claim arising out of or related to the Contract shall be decided by litigation in Franklin County Common Pleas Court, too.

4

Ibid. Although Section 9.1.1 has not been included in the abridged copy of the Contract provided in Exhibit B, Plaintiff has not disputed either reception of the letter or the accuracy of its representation of the Contract's content. The letter concludes by relying on the above provisions as the basis for calling upon Plaintiff to "dismiss the pending litigation and re-file it in Franklin County Common Pleas Court." Ibid.

As applicable to the facts of this case, the law of Ohio and federal law treat forum selection clauses similarly.[2] See General Electric Co. v. G. Siempelkamp, 29 F.3d 1095, 1098 n. 3 (6th Cir.1994); Baker v. LeBoeuf, Lamb, Leiby & Macrae, 105 F.3d 1102, 1105 (6th Cir 1997); Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006)

> A forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable. *Kennecorp [Mortgage Brokers, Inc. v. Country Club Convalescent Hospital Inc.*, 66 Ohio St.3d 1 (1993)], 610 N.E.2d at 988 (upholding the validity of a forum selection clause in a contract between a California company and an Ohio-based company which designated Ohio as the forum and Ohio law as the choice of law). The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside. *M/S Bremen [v. Zapata Off-shore Oil Co.]*, 407 U.S. at 15, 92 S.Ct. 1907; see also *General Electric Co.*, 29 F.3d at 1099 (rejecting Plaintiff's attempts to avoid litigating in Germany, the forum identified in the forum selection clause, as opposed to Ohio, on the grounds that Plaintiff, a sophisticated business had agreed to the deal and because Germany was where the deal was signed and negotiated, the goods were manufactured, much of the contract was performed and

---

2. This remains true as to the present case because the contracts involved do not contain assignment provisions creating a so-called "floating forum selection clause" declared to be against the public policy of the State of Ohio in Preferred Capital, Inc. v. Power Eng'g Group, Inc., 112 Ohio St.3d 429 (2007). Thus, the variation in treatment between state and federal law on that point recognized by our circuit in Preferred Capital, Inc. v. Sarasota Kennel Club, Inc., 489 F.3d 303 (6th Cir. 2007), has no significance here.

5

>presumably where witnesses would be located); *Kennecorp*, 610 N.E.
>2d at 989.
>
>In determining the validity of a particular forum selection
>clause, we thus consider the following factors: (1) the commercial
>nature of the contract; (2) the absence of fraud or overreaching; and
>(3) whether enforcement of the forum selection clause would other-
>wise be unreasonable or unjust. *Info. Leasing Co. v. Jaskot*, 151 Ohio
>App.3d 546, 784 N.E.2d 1192, 1195-96 (Ohio Ct.App.2003); see also
>*M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907; and *Kennecorp*, 610
>N.E.2d at 989.

Associates in Urology at 721.

In the case of Defendant Weis, the forum selection clause is to be found in the provisions of two separate, but directly related, commercial contracts for work on a construction project to be performed in Franklin County, Ohio.

>The commercial nature of a contract is a vital factor weighing
>in favor of enforcement of a forum selection clause. *Info. Leasing Corp.*,
>784 N.E.2d at bothof which1195. Commercial forum selection clauses
>between for-profit business entities are prima facie valid. "[S]uch
>clauses are prima facie valid in the commercial context, so long as the
>clause has been freely bargained for." *Kennecorp*, 610 N.E.2d at 989;
>*Info. Leasing Corp.*, 784 N.E.2d at 1195 (finding that defendant sole
>proprietorship was not in the same position as a consumer who enters
>into an agreement with a commercial entity, and was presumed "to
>have some experience in contractual and business matters.").

Ibid. Here, a local owner has contracted with an out-of-state general contractor and its out-of-state bonding company for construction of a multi-million-dollar project in this county and has included a provision that any contract-related disputes are to be settled by litigation in the local state court. The out-of-state general contractor has then sub-contracted with an Ohio painting contractor[3] for the interior and ex-

---

3. As previously noted, Plain City is in Union County, Ohio, which adjoins Franklin County.

terior painting called for by the general contract and has included provisions that permit it, the general contractor, to choose any one of three methods for resolving disputes arising under provisions of the subcontract: 1) it may choose the method provided by the general contract; 2) it may choose litigation in state or federal court in Franklin County; or 3) it may choose arbitration. Neither the parties nor the circumstances and terms of the two contracts suggest fraud or overreaching.[4] The only remaining question, therefore, is whether it would be unreasonable or unjust to enforce the general contractor's choice of litigation in the Common Pleas Court of Franklin County to resolve the dispute in this case, and this Court finds no basis for concluding that enforcement would either "unreasonable or unjust."

The most serious argument raised by Plaintiff on this last question has to do with its claim against Defendant Federal on the performance bond of the general contract. Plaintiff TPC argues that it "is not a signatory to the Contract Bond," and that it never agreed to submit its claims against Federal to the Franklin County Court of Common Pleas. Pl'tf Memo. In Opp., Doc 9, p.2. Plaintiff's argument is effectively defeated by the very circumstances to which it calls attention. TPC has no claim to pursue against Defendant Federal except under the main construction contract to which Federal's bond applies: and TPC is *not* a party to that contract. In other words, TPC has a claim against Federal, if at all, only as a third party beneficiary, and as to such parties, in Ohio the law is clear:

> Where a party to an agreement, upon a sufficient consideration

---

4. The handwritten and initialed additions and amendments to the subcontract reenforce the impression of an arms-length transaction actively negotiated by the parties.

> makes a promise to another party or parties to the agreement for the benefit of a third, such third person may maintain an action at law upon the promise, even though he be not named especially as the person benefited; <u>but such third person acquires no greater rights than are set forth in the agreement</u>.

<u>Union Savings & Loan Co. v. Cook</u>, 127 Ohio St. 26, 186 N.E. 728 (1933), Syllabus 1 (emphasis supplied); see <u>Ohio Savings Bank v. H. L. Vokes Co.</u>, 54 Ohio App.3d 68. (1989). Even where a non-signatory, third-party beneficiary sought to avoid a contract's arbitration clause under the general rule that a person cannot be compelled to arbitrate a dispute which he had not agreed to submit to arbitration, the Ohio Supreme Court held it would be "inequitable" to allow such a non-signatory to avoid the arbitration to which parties to contract had agreed.. <u>Grig v. Kahn</u>, 95 Ohio St. 3d 478, 482 (2002). Plaintiff has no more right to avoid the unequivocal forum choice of the main construction contract in this case than do the signatory parties.

As noted some years ago by another branch of this court, motions to dismiss based on forum selection clauses have been treated in a number of different ways by the courts See <u>General Elec. Co. v. G. Siempelkamp GmbH & Co.</u> 809 F.Supp. 1306, 1308-09 (S.D. Ohio,1993). In this case, Defendants have expressly relied on Rule 12(b)(1) and (b)(3), Fed. R. Civ. P., and 28 U.S.C. §1406(a). The Defendants' motion was promptly filed; thus, there is there is no question here of Defendants having waived their right to challenge venue. Cf., <u>Hospath Coal Co. v. Chaco Energy Co.</u>, 673 F.2d 1161 (9th Cir. 1982); <u>Frietsch v. Refco, Inc.</u>, 56 F.3d 825, 830 (7th Cir. 1995). Further, although it appears that the First Circuit and perhaps the Third may take a contrary position (see <u>LFC Lessors, Inc. v. Pacific Sewer Main-</u>

8

tenance Corp., 810 F.2d 1066 (1st Cir. 1984); National Micrographics Systems, Inc. v. Canon U.S.A., Inc., 825 F.Supp. 671 (D. N.J. 1993)), numerous opinions from the majority of other circuits make clear it is generally accepted that, in a proper case, forum selection clauses may be enforced by a motion to dismiss for improper venue pursuant to Rule 12(b)(3). See, e.g. Continental Ins. Co. v. M/V ORSULA., 354 F.3d 603, 606-07 (7th Cir. 2003) ("A lack of venue challenge, based upon a forum-selection clause, is appropriately brought as a Rule 12(b)(3) motion to dismiss. *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995)"); Argueta v. Banco Mexicano, S.A., 87 F.3d 320 (9th Cir. 1996) (Motion to dismiss based on contractual forum selection clause should be treated as motion under Rule 12(b)(3) rather than 12(b)(6)); Hsu v. OZ Optics Ltd., 211 F.R.D. 615 (N.D. Cal. 2002); Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 956 (10th Cir.1992) ("Motions to dismiss based on forum selection clauses are analyzed as motions to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)."); ADT Sec. Services, Inc. v. Apex Alarm, LLC 430 F. Supp.2d 1199, 1201 (D. Colo. 2006); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir.1998) ("[W]e hold that motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Federal Rule of Civil Procedure 12(b)(3) as motions to dismiss for improper venue."); Commerce Consultants Intern., Inc. v. Vetrerie Riunite, S.p.A., 867 F.2d 697 (D.C. Cir. 1989) (Rule 12(b)(3) dismissal based on existence of forum selection clause affirmed.); Zurich Insurance Co. v. Prime, Inc., 419 F. Supp.2d 384, 386 (S.D. N.Y. 2005) ("[C]ourts of this circuit have made clear that courts do possess the

9

ability under either Rule 12(b)(3) or § 1406(a) to dismiss a case upon a motion that a forum selection clause renders venue in a particular court improper.")

In our circuit, the Eastern District of Tennessee has relied on Rule 12(b)(3) to consider a motion to dismiss based on a contractual forum-selection clause that the court found called for venue in a Tennessee state court. Navickas v. Aircenter, Inc., E.D. Tenn. No 1:02-CV-363, 4-10-03, 2003 WL 21212747. Like this case, Navickas was an original filing under authority of 28 U.S.C. §1332, not a removed case before the court under authority of §1441(a), and the court concluded that circumstance made the Sixth Circuit's ruling in the removed case of Kerobo v. South-western Clean Fuels, Corp., 285 F.3d 531 (6th Cir. 2001), distinguishable on the facts and, therefore, not controlling law in these circumstances. This Court agrees and further concludes that, especially where, as here, the Court has found it unnecessary to consider matters beyond the pleadings, the pertinent contracts, and undisputed facts (such as the Defendants' letter notice of their forum choice), ruling on the basis of Defendants' motion pursuant to Rule 12(b)(3) is both authorized and appropriate.

Consistent with the foregoing, the Court finds that Defendants' Motion To Dismiss Plaintiff TPC's Complaint (Doc. 6) should be, and it hereby is, GRANTED, and this case is DISMISSED without prejudice to the same being re-filed in the Court of Common Pleas of Franklin County, Ohio.

IT IS SO ORDERED.

1-20-2009
Dated

Edmund A. Sargus, Jr.
United States District Judge